108 F.3d 1380
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bradley G. CONLEY, Defendant-Appellant.
 No. 96-3106.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 18, 1997.*
Decided March 18, 1997.
 
 Before FLAUM, MANION and EVANS, Circuit Judges.
 ORDER
 Bradley G. Conley pleaded guilty to one count of forging U.S. Postal Service money orders in violation of 18 U.S.C. § 500 and one count of forging U.S. Treasury checks in violation of 18 U.S.C. § 510(a)(1). At sentencing, the district court found Conley obstructed justice and increased his offense level by two points pursuant to U.S.S.G. § 3C1.1. Conley appeals the increase.
 Conley was employed as a clerk at Postal Products Unlimited, Incorporated (Postal Products), a Wisconsin corporation which sells postal products, equipment, and supplies to post offices throughout the United States. Payments to the company were usually made with United States Postal money orders or United States Treasury checks. Conley's tasks as clerk included the handling and packaging of customers' orders, maintaining equipment, and processing incoming mail.
 The owner of Postal Products, Brian Nelson, became suspicious of Conley's activities after noticing many of his customers' accounts were thirty days overdue. After contacting the customers about their delinquent accounts, Nelson discovered the checks and money orders had been deposited at a bank in Elkhorn, Wisconsin, and not credited to the customers' accounts. Nelson then approached Conley, who lived in Elkhorn. Conley admitted he took approximately $300, but later revealed he had taken $7,000 from the company. A United States Secret Service and United States Postal Service joint investigation ensued. The investigation determined that 260 checks and money orders totalling over $57,000 had been stolen and a large amount of money had been deposited in Conley's bank account. The investigation also revealed that some of the stolen funds were used by Conley to pay for vacations, his college tuition, and a car.
 Several months after Nelson uncovered the thefts and reported them to the Brookfield, Wisconsin Police Department, Conley left a message on Nelson's voice mail. The message stated that if Nelson did not pay him $45,000 as "severance pay", he would go to the authorities about Nelson's alleged wrongdoing in running Postal Products.
 Conley was indicted and pleaded guilty to two counts of forgery. The Presentence Investigation Report stated that Conley's voice mail was a threat to Nelson and constituted obstruction of justice under U.S.S.G. § 3C1.1 and Application Note 3(a) to U.S.S.G. § 3C1.1. Conley objected to the probation officer's recommended increase.
 
 
 1
 At sentencing, the district court rejected Conley's argument that his actions did not constitute an obstruction of justice under the sentencing guidelines. The court concluded that the voice mail message "could only be construed as an attempt on the part of this defendant to intimidate Mr. Nelson into, one apparently toning down his complaint; and number two, to provide money for Mr. Conley."[1] The district court then concluded that the total offense level was 13 with a Criminal History Category of I, and thus, the Guideline range was 12 to 18 months incarceration. The district court sentenced Conley to a total of 14 months' imprisonment for each count, to run concurrently, followed by a three year term of supervised release, community service, and $56,408.53 in restitution.
 
 
 2
 The sole issue on appeal is whether the district court erred in increasing the offense level pursuant to U.S.S.G. § 3C1.1. We defer to the district court's sentencing determinations and will not disturb the court's factual findings unless they are clearly erroneous. United States v. Hassan, 927 F.2d 303, 309 (7th Cir.1991). We will only overturn a factual finding at sentencing if our review of the entire record leaves us with a firm conviction that a mistake has been made. United States v. Gabel, 85 F.3d 1217, 1221 (7th Cir.1996).
 
 
 3
 Section 3C1.1 provides that the sentencing court shall increase the defendant's offense level by two if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." Among the non-exhaustive list of conduct constituting obstruction of justice is "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1, Application Note 3(a). In addition, § 3C1.1 requires specific intent to obstruct justice. United States v. Henderson, 58 F.3d 1145, 1153 (7th Cir.1995).
 
 
 4
 Conley claims the district court erred by ignoring evidence which shows Conley did not intend to obstruct justice.[2] Specifically, Conley claims the court ignored his testimony at the plea hearing that the voice mail message he left was not intended as a threat, but was in reaction to Nelson's threats. Conley testified that the:
 
 
 5
 Only thing that had happened was the owner of the company did call myself and my mother and also say that if I were to say anything in court against him that would only do me harm and that he would is--what he told my mother that he would bury me, meaning that he'd testify against me. Originally when we had discussed before he even turned me in, he said if I would cooperate, he would do anything he could to testify on my behalf, et cetera. But after that statement, I don't believe that's what his intentions were and that is the only reason that I even made that phone call.
 
 
 6
 In addition, Conley asserts the voice mail message was not a threat, but that he was angered and frustrated about his situation. However, the voice mail message reveals more than Conley's frustration and anger at Nelson. Conley demanded $45,000 from Nelson as "severance pay." He also stated that when it came time for sentencing, he would play "Let's Make a Deal" in that he would notify the authorities about Nelson's alleged embezzlement from Postal Products.[3]
 
 
 7
 At sentencing, the district court concluded the message left on Nelson's voice mail could only be construed as an attempt to intimidate Nelson. The court stated Conley was willing to trade off allegedly illegal information for $45,000. The sentencing court did not accept Conley's characterization that the voice mail message was born out of frustration and thus not intentional, but instead found the message was threatening. We give special deference to findings based upon credibility determinations, which "can virtually never be clear error." United States v. Hickok, 77 F.3d 992, 1007 (7th Cir.), cert. denied, 116 S.Ct. 1701 (1996) (quoting Anderson v. Bessemer City, 470 U.S. 564, 575 (1985)).
 
 
 8
 Conley also argues that there is a lack of evidence as to the effect of his message on Nelson and thus asserts this negates the court's finding that Conley's obstructive conduct was material. Conley suggests that for § 3C1.1 to apply, the government must prove his alleged attempts to influence a witness concerned a material aspect of the witness' testimony. We note, however, the guideline itself does not impose a materiality requirement, nor does the example given under Application Note 3(a). See Application Note 3(a); United States v. Snider, 976 F.2d 1249, 1251-52 (9th Cir.1992). Thus, Conley's materiality argument is misplaced.
 
 
 9
 Last, Conley states the voice mail message was not related to the "instant offense" as required under § 3C1.1, but related to Nelson's alleged crimes. This court has stated that the phrase "instant offense" means the obstruction must be in relation to the offense charged in the indictment and of which the defendant was convicted. United States v. Strang, 80 F.3d 1214, 1218 (7th Cir.1996). Here, Conley was indicted and convicted of forging U.S. Treasury checks and U.S. Postal Service money orders. The district court concluded the voice mail message was directly related to Conley's offenses, that is, to "tone down" Nelson's complaints about Conley's conduct. The message was not in relation to Nelson's alleged culpable conduct, as Conley suggests. We defer to the district court's finding that the message involved Conley's crimes, see Hassan, 927 F.2d at 309, and conclude Conley's argument is without merit. Thus, the judgment of the district court is
 
 
 10
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 See Sentencing Transcript, August 6, 1996, at 17
 
 
 [2]
 Conley also states that the district court did not view his statements in a light most favorable to the defendant as required by Application Note 1 of § 3C1.1. However, this assertion is not developed nor explained in his brief and not supported by the record
 
 
 [3]
 See Presentence Investigation Report, Attachment